1
2
3
4
5
6
7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE
8
9
10
11
12
13
14
15
16
17
18

SAMIT PATEL, Individually and on Behalf
of All Other Persons Similarly Situated,

        Plaintiff,

    v.

SEATTLE GENETICS, INC., CLAY B.
SIEGALL, TODD E. SIMPSON, and
JONATHAN DRACHMAN,

        Defendants.

Case No. C17-41RSM

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS AND GRANTING
IN PART REQUEST FOR JUDICIAL
NOTICE

## I.     INTRODUCTION

      This matter comes before the Court on Defendants' Motion to Dismiss, Dkt. #22, and

Defendants' Request for Judicial Notice, Dkt. #24. Defendants argue that the Consolidated

Amended Complaint ("CAC"), Dkt. #18, fails to adequately plead its securities claims.

Defendants rely in part on documents outside the pleadings. In Response, Plaintiff argues that

the CAC is adequate to satisfy the pleading standards of Rule 12(b)(6), the Private Securities

Litigation Reform Act ("PSLRA"), and Rule 9(b). Plaintiff also argues that documents not

referenced in the CAC should either not be considered or acknowledged only for their

authenticity. *See* Dkt. #26. For the reasons stated below, the Court GRANTS Defendants' Motion to DISMISS and GRANTS IN PART Defendants' Request for Judicial Notice. The Court will grant leave for Plaintiff to file a second consolidated amended complaint.

## II. BACKGROUND[1]

This is a putative class action filed on behalf of persons or entities who purchased or otherwise acquired Seattle Genetics, Inc.'s common stock between October 27, 2016, and December 27, 2016, both dates inclusive (the "Class Period"), seeking to pursue remedies under §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). Lead Plaintiff Carl Johnson, individually and on behalf of all other persons similarly situated, bring this action against Seattle Genetics and the individual defendants Clay B. Siegall, Todd E. Simpson, and Jonathan Drachman.

Seattle Genetics is a development stage biopharmaceutical company traded on the NASDAQ exchange under the symbol "SGEN." Seattle Genetics has a type of cancer treatment known as an antibody-drug conjugate ("ADC") under development, specifically the drug SGN-CD33A, which uses antibodies to target specific antigens on the surface of cancerous cells, and deliver locally strong anticancer agents that would be too toxic to administer otherwise. Seattle Genetics' trials of SGN-CD33A focused on developing the drug to treat a type of blood cancer called Acute Myeloid Leukemia ("AML").

SGN-CD33A is the successor to an earlier ADC developed by the pharmaceutical company Pfizer known as Mylotarg (Gemtuzumab ozogamicin). Mylotarg was manufactured and marketed by Pfizer from 2000 to 2010 as a treatment for AML. In June 2010, Pfizer withdrew Mylotarg from the market at the request of the FDA because an advanced stage

---

[1] The following background facts are taken from Plaintiff's Consolidated Amended Complaint ("CAC"), Dkt. #18, and accepted as true for purposes of ruling on Defendants' Rule 12(b)(6) Motion to Dismiss.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND GRANTING IN PART REQUEST FOR JUDICIAL NOTICE - 2

clinical trial demonstrated that the fatal rate of treatment-related toxicity was significantly higher than standard chemotherapy with no corresponding benefit to cancer patients.

Plaintiff alleges that throughout the Class Period, Defendants repeatedly claimed that SGN-CD33A had a superior design and more advanced ADC technology than Mylotarg, allowing it to kill cancerous cells effectively without the toxicity that doomed the earlier drug. Specifically, throughout the Class Period, Defendants allegedly claimed SGN-CD33A did not share the toxic side effects of Mylotarg, and touted the absence of liver disease in clinical trials, while omitting that internal information disseminated to Defendants and others within Seattle Genetics unquestionably demonstrated that SGN-CD33A caused liver toxicity (hepatotoxicity).

Plaintiff lists several sources of information available to Defendants indicating that SGN-CD33A posed a high risk of hepatotoxicity. *See* CAC at ¶¶ 5, 38–47. This information in part comes from a confidential witness working for Seattle Genetics, "CW1." CW1 has seventeen years of experience in the biotechnology industry, and served as the Senior Environmental Health and Safety Engineer at Seattle Genetics from March 2015 to February 2017. CW1's responsibilities included, *e.g.*, coordinating with Seattle Genetics' in-house toxicologist to prepare Safety Data Sheets that listed specific levels of toxicity associated with each organ in the human body. The CAC indicates that CW1 communicated his concerns about the toxicity of SGN-CD33A to his superiors but not the named defendants directly.

Plaintiff provides several examples of allegedly materially false and misleading statements made by Defendants to investors regarding SGN-CD33A. *See id.* at ¶¶ 48–57. Generally speaking, these statements speak positively of SGN-CD33A's promise as a treatment but omit that SGN-CD33A had known risks of liver toxicity, and that as a result, a number of

patients exposed to SGN-CD33A in clinical trials were experiencing serious adverse hepatotoxic events.

On December 27, 2016, the FDA placed a full clinical hold on Seattle Genetics' Phase I/II trial of SGN-CD33A administered to stem cell transplant patients ("Stem Cell Phase I/II"). The FDA also placed partial clinical holds on two other Phase I trials of SGN-CD33A administered in combination with chemotherapy regimens in AML patients. Seattle Genetics issued a press release that same day stating that the trials subject to partial clinical holds would not enroll new patients, and that existing patients could continue to participate if they signed a revised consent form. The press release noted that six patients in the trials had been identified with hepatotoxicity, with "four fatal events," and that these six patients were out of more than 300 patients in the clinical trials. CAC at ¶ 58. Plaintiff does not plead exactly when these hepatoxic events occurred, whether before or after the allegedly misleading statements above, and has stated in briefing that this information has not been revealed by Defendants. *See* Dkt. #25 at 12.

On this news, Seattle Genetics' stock price declined by $9.50 per share, or by over 15%, to close at $52.36 on December 27, 2016. That same day, Credit Suisse analyst Kennen McKay lowered the Company's price target by $10, and remarked that the announcement was surprising given that Defendants had created the impression that SGN-CD33A had unique technology to "avoid the [toxicity] pitfalls" of Mylotarg. CAC at ¶ 9.

On March 6, 2017, the Company announced that it would abandon the Stem Cell Phase I/II trial and would adopt substantial risk mitigation measures to address hepatotoxicity in all other trials of SGN-CD33A. With these hepatotoxicity risk mitigation measures in place, the FDA lifted the partial clinical holds it had placed on two other Phase I trials.

On January 10, 2017, Plaintiff filed the initial complaint in this case. Dkt. #1. On April 7, 2017, the Court entered an Order appointing a lead plaintiff and approving the lead plaintiff's selection of counsel. Dkt. #8. On June 6, 2017, the lead plaintiff filed the Consolidated Amended Complaint ("CAC"). Dkt. #18. the CAC alleges violations of §§10(b) and 20(a) of the Exchange Act and violation of SEC Rule 10b-5. Plaintiff names certain individual defendants in addition to Seattle Genetics. Defendant Siegall is Seattle Genetics' co-founder, President, Chief Executive Officer and Chairman of the Board of Directors. Defendant Simpson was Seattle Genetics' Chief Financial Officer during the relevant period. Defendant Drachman was Seattle Genetics' Chief Medical Officer and Executive Vice President, Research and Development during the relevant period.

## III.    DISCUSSION

### A. Legal Standard

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id*. at 570.

Securities fraud claims are subject to heightened pleading standards under Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). To satisfy Rule 9(b), a claim of fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Particularity under Rule 9(b) requires the plaintiff to plead the "who, what, when, where, and how" of the misconduct alleged. *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009). Pursuant to the PSLRA, a complaint alleging private securities fraud must "plead with particularity both falsity and scienter." *In re Daou Systems, Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005) (quoting *Gompper v. VISX*, 298 F.3d 893, 895 (9th Cir. 2002)). A securities fraud complaint must consequently "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omissions is made on information or belief, the complaint shall state with particularity all facts on which that belief is formed." *Id*.; 15 U.S.C. § 78u-4(b)(1). When examining whether plaintiffs' allegations of scienter are sufficient to survive a motion to dismiss under the PSLRA, the Court "must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs." *Gompper*, 298 F.3d at 897.

Although required to apply heightened pleading standards, the Court will not be drawn into assessing the credibility of potential witnesses or answering questions of fact.

**B. Request for Judicial Notice**

As an initial matter, the Court agrees with Plaintiff that Defendants' request for judicial notice should be granted only in part. The Court will deny Defendants' request to take judicial notice of a medical journal article not referenced in the CAC. Consideration of this kind of

factual evidence, related to a key fact in dispute, is inappropriate and unnecessary at the Rule 12(b)(6) stage. The remainder of the documents submitted by Defendants will be considered for their existence and authenticity only. *See United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

### C. Claims brought under Section 10(b) and Rule 10b-5

To adequately state a claim under Section 10(b) of the Exchange Act and Rule 10b-5, Plaintiff must allege facts sufficient to show: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

#### 1. Misrepresentations or Omissions

To meet the first element of a claim under Section 10(b) or Rule 10b-5, a complaint must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). A plaintiff must further show that defendants made statements that were "misleading as to a material fact." *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1318, 563 U.S. 27, 179 L. Ed. 2d 398 (2011) (quoting *Basic Incorporated, et al. v. Levison et al.*, 485 U.S. 224, 238, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988) (emphasis in original). A statement is material when there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic*, 485 U.S. at 231-32. A statement is misleading if it gives a reasonable investor the "'impression of a state of affairs that differs in a material way from the one that actually exists.'" *Berson v. Applied Signal*

*Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2007) (quoting *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)). "Once defendants cho[o]se to tout positive information to the market, they [are] bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information." *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705-06 (9th Cir. 2016) (internal quotation marks and citations omitted). "Whether a statement is misleading and whether adverse facts are adequately disclosed are generally questions that should be left to the trier of fact." *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1017 (S.D. Cal. 2005) (citing *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir.1995)); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1018 (C.D. Cal. 2008) ("the truth-on-the-market defense is intensely fact-specific, so courts rarely dismiss a complaint on this basis.").

Plaintiff sets forth Defendants' materially false and misleading statements and omissions in paragraphs 48 through 62 of the CAC. For example:

> 54. On December 3, 2016, Seattle Genetics issued a press release announcing partial results from the 7+3 Phase I study, which included the following statements:
>
> …
>
> "Our clinical trial data reported at ASH demonstrate that adding vadastuximab talirine, also known as 33A, to standard of care treatment results in a rapid, high rate of remissions in frontline, younger AML patients with poor prognosis. Notably, seventy-eight percent of patients who achieved remissions in this trial tested negative for minimal residual disease, which means no cancer could be detected with a sensitive test," said Jonathan Drachman, M.D., Chief Medical Officer and Executive Vice President, Research and Development at Seattle Genetics. ***"In this trial, 33A in combination with 7+3 was well-tolerated, with a low early mortality rate.*** Based on these promising, early data, we plan to initiate a randomized phase 2 clinical trial in 2017 in younger newly diagnosed AML patients to further evaluate the potential benefit of adding 33A to standard of care."

"People with acute myeloid leukemia die of infections or bleeding within weeks or a few months of diagnosis without effective, aggressive chemotherapy. Even with current treatment regimens, fewer than 50% of younger adults are successfully treated. ***The phase 1 results of 33A in combination with standard of care show a high rate of remissions in younger newly diagnosed AML patients without significantly adding to the toxicity of the treatment.***

…

***No veno-occlusive disease/sinusoidal obstruction syndrome or significant hepatotoxicity was observed on treatment.***

Dkt. #18 at 16–18 (emphasis in original).

Defendants argue that the above press release related to a specific study, "Study 2," and that Plaintiff "has not alleged any facts indicating that these December 3 Study 2-specific statements were false" or "that a single Study 2 patient experienced significant hepatotoxic events or died from such events." Dkt. #22 at 22.

In Response, Plaintiff argues that, under the PSLRA, "even literally true statements can be misleading where, as here, they omit material information." Dkt. #25 at 16 (citing *Miller v. Thane, Int'l Inc.*, 519 F.3d 879, 886 (9th Cir. 2008)). Plaintiff pleads and argues in briefing that Defendants repeatedly failed to mention material information about SGN-CD33A's toxicity that was known to Defendants. Most persuasively, Plaintiff argues that the December 3, 2016, press release, above, failed to disclose that patients in the trials had already experienced hepatotoxic events while simultaneously touting the drug's lack of "significant" hepatotoxicity, and that this satisfies the standard for misleading statements under prior case law. *Id.* at 19 (citing *Schueneman*, 840 F.3d at 705-06; *Juno Therapeutics*, 2017 U.S. Dist. LEXIS 91608, at *17-18).

On Reply, Seattle Genetics argues that Section 10(b) and Rule 10b-5 "prohibit only misleading and untrue statements, not statements that are incomplete," and "do not create an

affirmative duty to disclose any and all material information." Dkt. #28 at 12–13 (citing *Brody*, 280 F.3d at 1006; *Matrixx*, 563 U.S. at 44).

The Court finds that Plaintiff has more than adequately pled misrepresentations or omissions under the PSLRA and Rule 9. Plaintiff has specified each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and when and how the statements were made. *See Gompper*, 298 F.3d at 895. Taking all facts pled as true, the Court finds that Plaintiff has made facially plausible claims of misrepresentations and omissions in violation of §§10(b) and 20(a) of the Exchange Act and violation of SEC Rule 10b-5 based on a duty to disclose the hepatotoxicity events at issue given the positive statements made during the Class Period. *See Schueneman*, 840 F.3d at 705-06 ("Once defendants cho[o]se to tout positive information to the market, they [are] bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information."); *Matrixx*, 131 S.Ct. at 1321 (the duty to disclose is triggered either by a specific requirement under the relevant regulations or "when necessary to make statements made, in the light of the circumstances under which they were made, not misleading."). Whether or not each of Defendants' statements were materially misleading is an intensely fact-specific inquiry. Defendants have failed to show that the above statements could *not* have been materially misleading. Based on the information before the Court, even if the risk of hepatotoxicity was known to investors, the disclosure of an actual death could be viewable by the reasonable investor as having significantly altered the 'total mix' of information, and it appears investors reacted negatively to the subsequent disclosure with a drop in Seattle Genetics' stock price. Accordingly, this is not a basis for dismissal.

### 2. Scienter

The PSLRA requires that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2)(A).  To satisfy this state of mind element, the "complaint must allege that the defendant made false or misleading statements either intentionally or with deliberate recklessness."  *In re Verifone Holdings, Inc. Sec. Litig.*, 704 F.3d 694 (9th Cir. 2012) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (internal alterations omitted)).  While facts showing a motive and opportunity to commit fraud "provide some reasonable inference of intent," they are "not sufficient to establish a strong inference of deliberate recklessness."  *In re Verifone*, 704 F.3d at 701. The Supreme Court has instructed that allegations are to be reviewed "holistically" in determining whether scienter has been adequately pled.  *Id.* (quoting *Matrixx*, 131 S.Ct. at 1324). At the end of the day, "[a] complaint will survive... only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007).

Defendants argue that the CAC lumps together Dr. Drachman, Dr. Siegall, and Mr. Simpson, referring to them as "defendants," and that this fails to satisfy the requirement that scienter be alleged with particularity as to each defendant separately.  Dkt. #22 at 25 (citing 15 U.S.C. § 78u-4(b)(2)(A); *In re Silicon Graphics, Inc. Sec. Litig.*, 970 F. Supp. 746, 752 (N.D. Cal. 1997)).  Defendants argue that Plaintiff fails to allege any specifics about the individual defendants' knowledge or mental state at the time the challenged statements were made, instead presenting evidence that CW1 communicated with other individuals in the company.  *Id.* at 25–26.  Defendants argue that the following allegation is conclusory: that "[b]y virtue of their

positions" as "senior managers of Seattle Genetics," the Individual Defendants "had actual knowledge of the materially false and misleading statements and material omissions," including "SGN-CD33A and its known risk of hepatotoxicity." *Id.* (citing CAC ¶ 76). Defendants argue that Plaintiff fails to allege any motive for the misrepresentations/omissions, *e.g.* insider trading. *Id.* at 27–28. Defendants argue that Plaintiff's inference of scienter is unreasonable.

In Response, Plaintiff argues that the CAC adequately pleads that "Defendants were aware of the deaths and other hepatotoxic events at the time they made statements to investors omitting this information in their December 2016 press releases, or deliberately disregarded this adverse information." Dkt. #25 at 24. Plaintiff argues that "[s]peaking about drug safety without disclosing the most important life-and-death safety information amounts to deliberate recklessness." *Id.* (citing *Schueneman*, 840 F.3d at 709; *Juno Therapeutics*, 2017 U.S. Dist. LEXIS 91608, at *21). Plaintiff bases this conclusion on the facts that Defendants "abandoned a clinical trial for a predecessor drug that was very close to 33A due to hepatotoxicity;" "had access to Safety Data Sheets that indicated a risk of hepatotoxicity associated with 33A;" and "were aware of a third party risk assessment that confirmed toxicity, especially after it caused a contract manufacturer to suspend production of 33A's key components." *Id.* at 24–25. To connect the negative information about SGN-CD33A to the individual Defendants' knowledge prior to making the above statements, Plaintiff argues that "[t]he Safety Data Sheets were widely available to the Company's employees, including Individual Defendants, and these reports indicated a risk of hepatotoxicity associated with 33A. *Id.* at 21 (citing CAC ¶ 41). Plaintiff argues that CW1 "sought to resolve these toxicity risks with both Defendants Simpson and Siegall, who declined to meet with him." *Id.* (citing CAC ¶ 46). Plaintiff also argues that knowledge can be imputed to Defendants legally under the "Core Operations Doctrine." *Id.* at

25 (citing *South Ferry LP v. Killinger*, 542 F.3d 776, 783–84 (9th Cir. 2008)). This Plaintiff argues that absence of insider sales or other evidence of personal financial gain is "irrelevant" to proving scienter. *Id*. at 25–26. Plaintiff argues that Defendants' competing inferences, interpreting their actions with an absence of scienter, are neither plausible nor compelling, and rely on documents outside the CAC. *Id*. at 26–28.

On Reply, Defendants argue that "the allegations show that CW1 was not in a position to know about hepatotoxicity in clinical study patients; never communicated CW1's concerns about hepatotoxicity to Siegall, Simpson, or Drachman; was not in a position to know about hepatotoxicity in clinical studies; and that the Safety Data Sheets for 33A dealing with environmental toxicity could not have informed Defendants of hepatotoxicity in clinical studies." Dkt. #28 at 14. Defendants argue the CAC relies too heavily on speculation of fraudulent intent, which is insufficient to meet the requirements of the PSLRA. *Id*. (citing *City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1134 (E.D. Wash. 2013), aff'd, 691 F. App'x 393 (9th Cir. 2017).

After reviewing the CAC holistically, the Court generally agrees with the above assertions made by Defendants. The Court finds that Plaintiff has failed to plead scienter with sufficient particularity through allegations that show intent or deliberate recklessness, and failed to point to cogent possible motivations for the Defendants to make the alleged misleading statements and omissions. *See Tellabs*, *supra*. The CAC fails to present allegations connecting knowledge of the alleged risks of hepatotoxicity of SGN-CD33A, environmental or otherwise, to the individual Defendants making the alleged misrepresentations, *e.g.* by pleading facts showing when and how Defendants became aware of the information known to CW1. The Core Operations Doctrine can only go so far. As the Ninth Circuit stated in *South Ferry LP*:

> Where a complaint relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard. In such cases the inference that defendants had knowledge of the relevant facts will not be much stronger, if at all, than the inference that defendants remained unaware. As a general matter, corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter--at least absent some additional allegation of specific information conveyed to management and related to the fraud or other allegations supporting scienter.

542 F.3d at 784-785 (internal quotation marks omitted). By failing to plead a strong inference of scienter, Plaintiff's claims under Section 10(b) of the Exchange Act and Rule 10b-5 must be dismissed.

### D. Claims brought under Section 20(a)

A Section 20(a) claim requires underlying primary violations of the securities laws. 15 U.S.C. §§ 78t(a); *In re Rigel Pharms., Inc. Secs. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012). Because Plaintiff has failed to plead an underlying violation of the federal securities laws, this claim will be dismissed as well.

### E. Leave to Amend

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The Court finds that Plaintiff could easily allege consistent facts that cure the above deficiencies and will grant leave to amend.

## IV.    CONCLUSION

Having reviewed the relevant pleadings and the remainder of the record, the Court hereby finds and ORDERS:

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND GRANTING IN PART REQUEST FOR JUDICIAL NOTICE - 14

(1) Defendants' Motion to Dismiss, Dkt. #22, is GRANTED. Plaintiff is granted leave to file a Second Consolidated Amended Complaint curing the above-mentioned deficiencies **no later than thirty (30) days** from the date of this Order. Failure to file an Amended Complaint within this time period will result in dismissal of Plaintiff's claims.

(2) Defendants' Request for Judicial Notice, Dkt. #24, is GRANTED IN PART as stated above.

DATED this 18 day of October, 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE